FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 AUG 13  PH 1: 08

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JO JO HOLDEN                     CIVIL ACTION

VS.                             NO. 03-2347

DAVID KNIGHT, ET AL

Section "C"(3)

Judge Berrigan
Magistrate Judge Knowles

TRIAL BY JURY

## PLAINTIFF'S OPPOSITION TO DEFENDANTS ANGELO AND ROTH RULE 12(b)(6) MOTION TO DISMISS(Record document 71)

These defendants never grow weary of burdening the Court and opposing counsel with the requirement of digging back through this huge record in order to refute the latest procedural dodge. If they had some legitimate questions about the scope of the plaintiff's first amended complaint, they could have sought a

Fee
Process
X  Dkd
CtRmDep
Doc. No.

1

stipulation.   But nothing can be done by these defendants unless it is done by motion and hearing.

Plaintiff's First Amended Complaint contains two paragraphs  which state clearly that plaintiff is asserting claims against these defendants in their individual capacity.  The amendment supplies what the Court found lacking earlier when the Court ruled that plaintiff had not adequately pleaded a claim against these defendants in their individual capacity.

All other factual allegations concerning claims made against these defendants in the original complaint and in the  petition filed in the 21st Judicial District Court which is now in this record(Record document 48, Exhibit 1) remain viable. These defendants recognized that all factual allegations in the record **TO DATE** are in play. Defendants' Motion page 6, footnote 30.

Nevertheless, their motion proceeds  as if these facts are not in the record.

1.    § 1981 claim.

§ 1981  was amended by Congress in 1991 to make clear that the statute's prohibition  covered all  aspects of the employment  contract-hiring, promotion, demotion, and termination.[1]   Prior to the amendment, the Supreme Court had

---

[1] Civil Rights Act of 1991, Pub.L. No. 102-166, § 101, 105 Stat. 1071(1991)

already interpreted the statute as prohibiting race discrimination in private employment.[2]

It will aid the Court in its decision if plaintiff sets forth verbatim the allegations from the original complaint(Record document which these defendants completely ignore when they speciously argue that plaintiff has not alleged a violation of §1981, namely, that plaintiff is a member of a racial minority, that the defendants intended to discriminate on the basis of race, and that the discrimination concerned a right protected by the statute.

The following factual allegations made in the original complaint and in the reply filed in the state court proceeding(Record document 53, attachment page 43) make it abundantly clear that LADOTD has a long and well-documented history of racial discrimination which continues to the present day. District 62, the location where plaintiff worked, has a record of racial discrimination involving other employees besides plaintiff. Defendants Angelo and Roth were the latest in a series of administrators at District 62 who did nothing to remedy the blatant race discrimination in that workplace.

---

[2] Johnson v. Railway Express Agency, 421 U.S. 454(1975).

Plaintiff has alleged a violation of § 1981  and no further pleading should be required:

## FOURTH CAUSE OF ACTION
## DENIAL OF PROCEDURAL DUE PROCESS OF LAW

26.

On May 1, 1987, the United States of  America filed an action against LADOTD alleging racial discrimination against blacks in LADOTD's employment practices including recruitment, hiring, assignment, promotion, qualifications, tests and selection standards. The action is captioned: **UNITED STATES OF AMERICA versus THE LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, ET AL NO. 87-0331-A United States District Court for the Middle District of Louisiana**.("the action").

27.

A consent decree was entered in the action on August 17, 1987. The consent decree established a format for identifying persons who were the victims of illegal discrimination, identified  specific positions which had been determined as being previously unavailable to black persons, and established a claim procedure whereby the victims of illegal discrimination would be offered employment or promotion in settlement of their respective claims.

28.

LADOTD instituted a Compliance Section in its organizational structure.

4

29.

The Compliance Section was responsible for developing an Affirmative Action Plan, for investigating employee grievances, and for tracking LADOTD's performance in the area of equal opportunity for blacks.

30.

The Compliance Section learned that District 62 had segregated maintenance crews.

31.

The Compliance Section ordered District 62 to integrate the maintenance crews.

32.

Several employees of LADOTD filed grievances or lawsuits complaining of illegal race discrimination.

33.

Those employees are Munir Qasim, Vernie McGee, Burnell Dudley, Johnnie Jackson and Willie Keller.

34.

Some of those employees successfully proved that their claims were valid and obtained relief either from a court or from LADOTD.

35.

LADOTD did not afford plaintiff fair notice of the charges being leveled against him because of the incident, nor did LADOTD

afford plaintiff an  opportunity to respond to those charges prior to reaching the decision to terminate plaintiff's employment.

36.

Defendants    Gary Angelo and Robert P. Roth are career supervisory employees of the LADOTD.

37.

Angelo and Roth investigated the incident involving plaintiff and defendant Knight.

38.

Angelo and Roth  learned that prior to the incident, Knight  made a comment which indicated that he was leaving  DOTD  employment and that he would be taking someone with him.  The  words Knight used included a derogatory racial slur.

39.

Angelo and Roth learned that the plaintiff was the innocent victim of a deliberate and unprovoked attack.

40.

Angelo and Roth reviewed plaintiff's personnel file and learned that he had been employed since December 11, 1978, that his performance evaluations were satisfactory, and that he had never been disciplined.

41.

Nevertheless, Angelo and Roth decided to terminate plaintiff's employment and so notified him on November 13, 2001.

42.

Angelo and Roth were very familiar with DOTD policy concerning discipline of employees.

43.

DOTD policy requires that the employee be given written notice of the proposed disciplinary action, the facts on which that recommendation is based, and opportunity to be heard by the appointing authority prior to the disciplinary action being taken.

44.

Angelo and Roth did not follow DOTD policy.

45.

Angelo and Roth elected instead to inform plaintiff that he had the option to resign or be fired.

46.

Angelo and Roth wanted to get rid of the plaintiff, a black employee, under circumstances in which the black employee would have no recourse to complain about the termination.

47.

Angelo and Roth carried out their plan and informed plaintiff that he had to either resign or be fired.

7

48.

Plaintiff elected to submit a voluntary resignation.

49.

In that letter of resignation, plaintiff clearly indicated that the incident and his termination were racially motivated.

50.

Evan after reading plaintiff's comment on his letter of resignation, Angelo and Roth persisted in their illegal scheme and accepted the resignation.

51.

Angelo and Roth should have refused to accept the resignation and instead should have proceeded with the pre-deprivation procedure and give plaintiff an opportunity to make his case prior to his employment being terminated.

52.

Angelo and Roth have been schooled, trained and counseled by DOTD in the proper management of DOTD employees, and know how to carry out management functions in a racially neutral manner.

53.

Despite having actual knowledge of DOTD's expectations, Angelo and Roth chose to disregard their training and the interests of DOTD in order to promote their own racially discriminatory motives.

**2.    qualified immunity.**

The same facts  set forth above which were alleged in the original complaint and in the state court reply  have already dealt with the qualified immunity defense. The reply was filed in state court July 23, 2003. These defendants have made no further move in the state court to exit that litigation on the  qualified immunity bus ticket.

It is specious to argue that  the plaintiff voluntarily resigned his employment and that voluntary resignation eliminated the requirement imposed by law on these defendants to afford procedural due process. The right to procedural due process came into play on the day of the incident, October 16, 2001.

LADOTD Policy required that an investigation be conducted. If these defendants intended to fire the plaintiff because of his participation in this incident, then they were required by law to provide written notification to the plaintiff. They didn't provide the notification. Instead, they call him into the office and give an ultimatum: resign or be fired. The complaint alleges that these defendants **PURPOSELY DID THAT** so that there would be no way that plaintiff could later complain about what happened.

9

Plaintiff made a trip to the LADOTD headquarters in Baton Rouge and submitted a resignation which contains this cryptic statement:

**Justice wasn't weighed on a scale, but by my character content but by the color of my skin. High line racial profile.** Exhibit 1

The resignation is signed "Accepted" by defendant Gary Angelo.

LADOTD is subject to Title VII. LADOTD has annual Affirmative Action Plans and a Compliance Section to monitor its workplace. The final step in processing plaintiff's resignation involves asking this question: **Is there any way this individual could complain that this action was taken against him because of his race?**

The answer to that question is **YES**. And the answer is on the letter of resignation. So defendant Angelo **HAD TO KNOW** that plaintiff was playing the race card because Angelo accepted the resignation knowing that the allegation was in letter of resignation. It was staring him in the face, yet he did nothing other than to accept the resignation.

Likewise, the Compliance Section and the Head of Personnel never questioned why the plaintiff could think that his race was a motivating factor in the decision to fire him when this same letter crossed their desks.

The plaintiff has made sufficient allegations of fact to overcome the defense of qualified immunity.

### 3.    state law claims.

These defendants  argue that plaintiff's factual allegations, which must be taken as true on a motion to dismiss, somehow fail to put at issue whether whites were more favorably treated or whether the employer has constructively discharged the plaintiff.  Again, the record contains sufficient factual allegations to support all a state law discrimination claim as well as a constructive discharge claim. No more facts are needed at this point.

### 4.    injunctive relief.

Injunctive relief is only available against these defendants in their official capacity. No claim is made for injunctive relief against these defendants in their individual capacity and plaintiff would have readily stipulated had plaintiff been asked.

The motion is without merit and ought to be denied.

11

HOGAN & HOGAN


THOMAS J. HOGAN, JR., T.A.
BAR ROLL NO 6908
P O BOX 1274
HAMMOND LA 70404
(985) 542-7730

Counsel for plaintiff

CERTIFICATE OF SERVICE

A copy of this opposition was   served on all parties by United States Mail

August 10, 2004.

RECEIVED
NOV 1 3 2001

DOTD 03-16-0054 (R 12/81)
SF 14-R

STATE OF LOUISIANA
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT

**DISTRICT 62**

## RESIGNATION FORM

| Resignation Submitted by (Print Name in Full) | Resignation Effective Date | |
|---|---|---|
| _JoJo Holden Sr._ | _11-8-01_ | ☐ A.M.<br>☐ P.M. |
| Signature<br>_JoJo Holden Sr,_ | Social Security Number<br>_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_ | |

## REASONS FOR RESIGNATION    *(Please Check Where Applicable)*

### WORK SATISFACTION: Incentives

☐ Insufficient Pay
☐ Better Job—Private Industry
☐ Lack of Promotional Opportunities
☐ Job Security
☐ Work Not Interesting

### WORK CONDITIONS

☐ Shift Work
☐ Excessive Work
☐ Insufficient Work
☐ Physical Conditions of Work

### PERSONAL REASONS

☐ Poor Health
☐ Maternity
☐ Marriage
☐ Moving to Another Area
☐ To Go to School
☐ Military Service
☐ Transfer

### LIVING ENVIRONMENT

☐ Transportation
☐ Housing Facilities
☐ Living Costs
☐ Locality
☐ Reason Unknown
☐ Home Responsibilities
☐ Business Responsibilities
☐ Other (Specify)

## RELATIONS WITH PERSONNEL

☐ Relations with Fellow Employees
☐ Relations with Supervisor

**Remarks** _Justice wasn't weighed on a scale, but by my character content but by the color of my skin. High line racial profile,_

| Accepted By<br>_Tony Angelo_ | Date Accepted<br>_11/13/01_ |
|---|---|

PLEASE NOTE:  The Supervisor accepting resignation must sign all copies of this form and give employee the copy marked "Employee Copy." If employee is not available, copy should be mailed to him/her.

---

**EXHIBIT**

**1**

CIVIL SERVICE COPY